# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1875

JANE DOE

v.

EAST STROUDSBURG UNIVERSITY OF PENNSYLVANIA; VICTOR JASEI SAMU BURNS, Resident Advisor; DR. MARCIA G. WELSH, University President; MARIA Z. CUTSINGER, Director of Student Conduct and Community Standards; DR. DOREEN TOBIN, Vice President for Student Affairs; ALLEN K. WILLIAMS, Assistant to the Vice President of Student Affairs; CORNELIA SEWELL-ALLEN, Dean of Student Life; WILLIAM PARRISH, Chief of University Police; LYESHA J. FLEMING, Resident Director; JEAN MAKENLEY, Resident Assistant; JOHN DOE(S), Supervisors to Resident Directors and Advisors,

Appellants

_____

Appeal from the U.S. District Court, M.D. Pa.
Judge Jennifer P. Wilson, No. 3:22-cv-01690

_____

Before: HARDIMAN, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.
Argued February 3, 2026; Filed May 13, 2026
_____

NONPRECEDENTIAL OPINION[*]

MONTGOMERY-REEVES, *Circuit Judge*.

When "Congress has enacted no statute of limitations for a federal tort, [federal courts] ordinarily borrow the statute of limitations from state law." *Fisher v. Hollingsworth*, 115 F.4th 197, 209 (3d Cir. 2024). For the federal claims at issue in this action, that includes "the general or residual statute for personal injury actions" and any "coordinate tolling and revival provisions." *Id.* at 211 (quotation omitted). In this interlocutory appeal, Appellee Jane Doe argues her federal claims are timely because 42 Pa. Cons. Stat.

_____

[*] This is not an opinion of the full Court and, under 3d Cir. I.O.P. 5.7, is not binding precedent.

§ 5533(b)(2)(i.1) is a coordinate tolling rule. We disagree and will reverse in part the District Court's judgment.

## I. BACKGROUND[1]

Doe enrolled at East Stroudsburg University ("ESU") in 2016. In 2016 and 2017, she had an on-again-off-again romantic relationship with a resident advisor named Victor Burns. On March 30, 2018, Doe and Burns had a verbal and physical altercation. Doe alleges that Burns raped her that night. Doe reported the incident to campus police and filed a Title IX complaint. ESU found Burns responsible for violating its code of conduct, though not for violations of provisions covering sexual assault or harassment. ESU suspended Burns for a year but ultimately permitted him to reenroll. Meanwhile, Doe endured harassment from Burns's fraternity brothers, experienced symptoms of post-traumatic stress disorder, and suffered academically. In December 2018, Doe decided she could no longer "bear [her] anxiety" and left ESU. Appendix (hereinafter "App. __") 71.

In 2022, Doe sued ESU, several individual defendants affiliated with ESU (collectively, the "Appellants"), and Burns. She amended her complaint to the operative version (the "Complaint") in 2023. Doe alleges two federal claims. The first charges ESU with violating 20 U.S.C. § 1681, which is part of Title IX of the Education Amendments of

---

[1] Because Appellants challenge the District Court's order granting a motion to dismiss, we take the facts from the complaint, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (When considering a motion to dismiss, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

1972.  The second charges the Appellants and Burns with violating substantive-due-process rights guaranteed by the Fourteenth Amendment and made actionable by 42 U.S.C. § 1983.  Doe also alleged several state-law claims against the Appellants and/or Burns.

The Appellants (though not Burns) moved to dismiss, arguing, as relevant here, that Doe did not file her federal claims within the two-year period set by Pennsylvania's residual statute of limitations.  The District Court agreed with Doe that her federal claims were timely under 42 Pa. Cons. Stat. § 5533(b)(2)(i.1), which provides:

> If an individual entitled to bring a civil action arising from sexual abuse is at least 18 and less than 24 years of age at the time the cause of action occurs, the individual shall have until attaining 30 years of age to commence an action for damages regardless of whether the individual files a criminal complaint regarding the sexual abuse.[2]

But the District Court held that, because the statute saves only claims that "are causally connected to . . . sexual abuse," Doe's federal claims were timely only with respect to alleged conduct that occurred on or after March 30, 2018, and which "ar[o]se from" her assault.  App. 12 (quotation omitted).

The District Court later permitted the Appellants to file an interlocutory appeal,[3] concluding, under then-existing precedent, that "there [were] substantial grounds for difference of opinion as to whether § 5533(b)(2)(i.1)" rendered Doe's federal claims timely.

---

[2] The statute further defines "sexual abuse" to include certain compelled "sexual activities between an individual who is 23 years of age or younger and an adult."  42 Pa. Cons. Stat. § 5533(b)(2)(ii).

[3] Because Burns did not move to dismiss, he did not move for leave to file an interlocutory appeal and is not a party to this appeal.

*Doe v. E. Stroudsburg Univ. of Pa.*, No. 22-1690, 2024 WL 5689748, at *3 (M.D. Pa. Feb. 26, 2024). Subsequently, we also permitted an interlocutory appeal.

## II. DISCUSSION[4]

The sole issue before us is whether Doe's federal claims[5]—the Title IX claim in Count I and the substantive-due-process claim in Count II—are timely. To answer that question, we must begin with Pennsylvania's general or residual statute for personal injury actions: 42 Pa. Cons. Stat. § 5524. Section 5524 allows "two years" to sue for personal-injury torts. That statute of limitations governs "Title IX claims arising from actions occurring in Pennsylvania and involving Pennsylvania citizens." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) (citing *Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989)). It also governs Doe's substantive-due-process claim raised through § 1983 because, for § 1983 claims, we "borrow [Pennsylvania's] general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). *See, e.g.,* *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) ("The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."). The parties agree that § 5524 applies, and they do not dispute that Doe's federal claims are untimely under that law because she sued more than two years after the latest event alleged in her Complaint.

---

[4] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1292(b).

[5] The parties have not contested the District Court's disposition of Doe's state-law claims, which we accordingly do not disturb.

That does not end our inquiry, however, because federal courts must also apply a state's "coordinate tolling rules,"[6] *Hardin v. Straub*, 490 U.S. 536, 539 (1989) (quotation omitted), and Doe argues that her federal claims are timely under one purportedly qualifying rule: 42 Pa. Cons. Stat. § 5533(b)(2)(i.1). Unfortunately, § 5533(b)(2)(i.1) cannot save Doe's claim because under our precedent—even assuming, without deciding, that § 5533(b)(2)(i.1) is a tolling rule, as opposed to a specialized statute of limitations we may not apply—it is not "coordinate" with § 5524.

In *Fisher v. Hollingsworth*, we explained that "tolling and revival provisions are 'coordinate' with the general limitations period only when they apply generally to personal injury torts." 115 F.4th at 211. Thus, "we borrow only state-law timeliness rules that apply across the board to personal injury torts," not "specialized tolling and revival rules" that "apply only to a subset of personal injury torts." *Id.* at 210–11.

Section 5533(b)(2)(i.1) is a specialized rule, not a general rule. It does not apply to all personal-injury torts, but to a subset: those "arising from sexual abuse," where the victim was of a certain age when the cause of action accrued. 42 Pa. Cons. Stat. § 5533(b)(2)(i.1). A court therefore cannot apply § 5533(b)(2)(i.1) without first "analyz[ing] the nature of the underlying claims" to determine whether they arise from

---

[6] Doe did not invoke a § 1983 cause of action to seek relief under Title IX, which "is enforceable 'through an implied private right of action.'" *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998)). And we have not addressed whether courts assessing the timeliness of Title IX claims must apply the same tolling analysis as for § 1983 claims. The parties have assumed that the answer is yes, so we make the same assumption for purposes of this decision and leave the question for a future case.

5

qualifying conduct—as, indeed, the District Court did here.[7] *Fisher*, 115 F.4th at 212 (quotation omitted). *Fisher* prohibits such analysis "because the same state timeliness rules apply to every federal constitutional tort claim—no matter which constitutional right is at issue and no matter which common-law right it resembles."[8] *Id.* Thus, "we cannot apply [§ 5533(b)(2)(i.1)] to render [Doe's federal claims] timely." *Id.*

Doe resists this conclusion on two grounds. First, Doe argues "that state tolling rules govern unless they conflict with federal law or policy." Response Br. 9. That is not *Fisher*'s rule; the question, under our precedent, is simply whether a tolling rule applies "across the board" or is "tort-specific" in that it requires delving into the facts beneath a claim. *Fisher*, 115 F.4th at 210. Second, Doe claims that § 5533(b)(2)(i.1) applies, despite *Fisher*, because it is "a general, status-based tolling statute triggered by who the plaintiff is, not by what the tort is." Response Br. 16. In fact, the law cares about both. It defines the universe of covered plaintiffs through one criterion—age—that is status-based, and another—the nature of the plaintiff's harm—that is "sexual-assault-specific." *Fisher*, 115 F.4th at 212. As *Fisher* holds, that kind of rule "can never apply." *Id.*

\* \* \*

---

[7] We cannot, of course, fault the District Court for doing so; when the District Court decided the Appellants' motion to dismiss (and the later motion to certify an interlocutory appeal), we had not yet decided *Fisher*.

[8] Applying these principles in *Fisher*, we declined to enforce a statute that covered only "injur[ies] resulting from the commission of sexual assault" or similar acts. 115 F.4th at 210 (quoting N.J. Stat. Ann. § 2A:14-2b). We described that provision as "a specialized revival provision that applie[d] only to sexual assault torts." *Id.* at 212. The same is true of § 5533(b)(2)(i.1), which is similar in all relevant respects.

Doe alleges a tragic set of facts, and the timeliness of her federal claims does not make her alleged harm any less disturbing. Still, we must apply our law. Because *Fisher* requires us to treat § 5533(b)(2)(i.1) as a non-coordinate, and thus non-applicable, tolling rule, Doe's federal claims are barred by Pennsylvania's general two-year statute of limitations.

### III.    CONCLUSION

For the foregoing reasons, we will REVERSE in part the District Court's judgment and REMAND with instructions to dismiss Count I of Doe's Complaint, and Count II as against the Appellants, with prejudice.

*Counsel for Appellant East Stroudsburg University of Pennsylvania, et al*
Brett Graham          [**ARGUED**]
Hannah Kogan
Office of Attorney General of Pennsylvania


*Counsel for Appellee Jane Doe*
Kristen M. Gibbons Feden
Anapol Weiss          [**ARGUED**]

ROTH, *Circuit Judge*, concurring.

Our decision today adds Pennsylvania to the growing list of states where young victims of sexual abuse are barred from bringing federal claims that the state's limitations framework would otherwise permit to proceed. Although I agree with my colleagues that *Fisher v. Hollingsworth* ties our hands, I write separately because I believe *Fisher* was a misstep in our Circuit's jurisprudence.

My concerns track those expressed by my colleague, Judge Rendell, in her thoughtful partial dissent in *Fisher*. There, Judge Rendell explained that applying New Jersey's revival statute "not only comports with, but is compelled by, [Supreme Court] precedent."[1] I share her view.

*Fisher*'s rule—that we only borrow a state's tolling and revival provisions when they apply "across the board" to personal injury torts—is stitched together from three Supreme Court cases: *Wilson v. Garcia*,[2] *Owens v. Okure*,[3] and *Hardin v. Straub*.[4] *Wilson* and *Owens* resolved a specific problem, namely, the need for a single, predictable statute of limitations for § 1983 claims. Before *Wilson*, courts long struggled to select the appropriate limitations period for § 1983 claims, often choosing among multiple candidates based on how the claim was characterized.[5] *Wilson* clarified that § 1983 claims borrow

---

[1] *Fisher v. Hollingsworth*, 115 F.4th 197, 215 (3d Cir. 2024) (Rendell, J., dissenting).
[2] 471 U.S. 261 (1985), *abrogation on other grounds recognized by Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004).
[3] 488 U.S. 235 (1989).
[4] 490 U.S. 536 (1989).
[5] *Wilson*, 471 U.S. at 272-75; *see also id.* at 266 (noting Congress did not establish a specific limitations period governing § 1983).

1

the state limitations period for personal injury actions,[6] and *Owens* settled any lingering debate by confirming that when a state provides more than one personal injury statutes, courts should apply the general or residual statute.[7]

*Hardin*, by contrast, answered a different question, whether state tolling and related provisions travel with the borrowed limitations period.[8] *Hardin*'s teaching was straightforward: courts should not unravel state limitations rules unless doing so is necessary to protect federal interests.[9]

*Fisher* nevertheless reads *Wilson* and *Owens* to exclude what it characterizes as "tort-specific" revival provisions from the timeliness rules borrowed from state law.[10] But, as Judge Rendell observed in analyzing New Jersey's revival statute, "[t]here is simply no predicament here that is analogous to that which caused the Supreme Court to take the unusual course that it did in *Wilson* and *Owens*."[11] Instead, such provisions are better understood as "victim-specific."[12] They turn on the plaintiff's status rather than a need to choose among competing statutes or theories: *Hardin* involved a Michigan statute that extended the time to sue for prisoners with legal disabilities as a class;[13] the New

---

[6] *Id.* at 276.
[7] *Owens*, 488 U.S. at 236, 249-50.
[8] *Hardin*, 490 U.S. at 537.
[9] *Id.* at 539, 544 (concluding Michigan's tolling provision that suspended the limitations period for prisoners with legal disabilities did not frustrate the goals of § 1983 but instead aligned with § 1983's remedial purpose).
[10] *Fisher*, 115 F.4th at 211.
[11] *Id.* at 217 (Rendell, J., dissenting).
[12] *Id.* at 219.
[13] *Hardin*, 490 U.S. at 540.

Jersey statute at issue in *Fisher* extended the time for victims of sexual abuse;[14] and here, Pennsylvania's statute reflects the same legislative judgment.[15] In each setting, once the plaintiff falls within the defined class, the limitations rule applies without the kind of claim-by-claim sorting that specifically concerned the Court in *Wilson* and *Owens*.

Yet, under *Fisher*, we must disregard Pennsylvania's legislative judgment that certain victims who merit special treatment—that is, young victims of sexual abuse, who often experience significant trauma—should have additional time to bring suit. Nothing in § 1983's remedial framework suggests that honoring such provisions would undermine any federal interest.[16]

This case illustrates the real-world consequences of *Fisher*'s unfortunate turn in our Circuit's precedent. Doe's claims may not proceed at the federal level even though they borrow Pennsylvania's limitations period and are potentially timely in Pennsylvania state court. That mismatch is difficult to justify, especially where no federal policy or interest requires such a result.

Even so, *Fisher* is binding. Absent further guidance from the Supreme Court or our Court en banc, this panel is not free to depart from it. Judge Rendell aptly observed: "I truly regret that victims of sexual abuse are being denied their day in court, and that [the state's] policy that they be permitted to do so is being thwarted, based upon a flawed

---

[14] *Fisher*, 115 F.4th at 210.

[15] 42 Pa. Cons. Stat. § 5533(b)(2)(i.1).

[16] *See Hardin*, 490 U.S. at 544 n.14 (expressly rejecting the notion that *Wilson*'s concerns for uniformity, certainty, and the minimization of unnecessary litigation "weigh[ed] against [the] application of Michigan's tolling provision").

premise and logic that does not withstand scrutiny."[17]  This sentiment applies equally to the present case.  I respectfully concur.

---

[17] *Fisher*, 115 F.4th at 219 (Rendell, J., dissenting).